**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SAMANTHA MONTANA,

              Plaintiff,

        -v-                                                          6:23-CV-879 (AJB/TWD)

THE CITY OF UTICA, *et al.*,

              Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

**I.      INTRODUCTION**

On July 6, 2023, Samantha Montana ("plaintiff") filed this action alleging the City of Utica and five police officials (collectively, "defendants")—Sergeants Eric Scorzafava ("Sgt. Scorzafava"), Kerry T. Carville ("Sgt. Carville"), and Michael Curley ("Sgt. Curley"), Captain Stanley Fernalid ("Cpt. Fernalid"), and Chief Mark Williams ("Chief Williams")—are liable under 42 U.S.C. § 1983 for trespass and abuse of process based on an encounter Montana had with Sgt. Scorzafava on May 6, 2022.

The record indicates that, on that date, Sgt. Scorzafava was investigating shootings that had taken place nearby the prior evening when he saw a surveillance camera outside Montana's residence. He stopped, knocked on Montana's door, and sought her consent to review the camera's footage. Montana refused, and the encounter soured: Sgt. Scorzafava persisted, but Montana held firm. He told her not to call Utica police for assistance in the future, and she responded they were no help, anyway.

Montana then asked Sgt. Scorzafava to leave, and he did. At no point did Sgt. Scorzafava or any other official search, arrest, charge, or otherwise subject Montana to any criminal, collateral, or other civil proceeding based on the verbal encounter.

Following the exchange of discovery, this case was reassigned to this Court. Dkt. No. 45. Afterwards, defendants moved for summary judgment as to all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 46.

The motion has been fully briefed, Dkt. Nos. 46, 48, and 49, and will be GRANTED based on the parties' submissions without oral argument.

## II. BACKGROUND[1]

According to a Utica Police Department ("UPD") incident report, at approximately 8:46 p.m. on Thursday, May 5, 2022, police responded to a report of shots fired near 912 Saratoga Street in Utica, New York. Dkt. No. 46-3 at 6. Two individuals, Gevonte Griffin and Denair Thomas, had been shot: Griffin in the back, while listening to music, and Thomas in the right leg, while playing basketball. *Id.* Both were taken to what was then known as St. Elizabeth Hospital for treatment. *See id.*

Among the responding officers was Sgt. Scorzafava. Dkt. No. 46-3 at 6. Shortly after the incident, Sgt. Scorzafava spoke with Griffin, Thomas, and two of the victims' family members at the hospital. *Id.* None could identify who had shot the men. *Id.* As part of the

---

[1] Except as specified, the following facts are undisputed and derive from the parties' discovery materials, including their deposition transcripts, Dkt. Nos. 46-5 ("Montana Dep.") and 48-3 ("Scorzafava Dep."). Pagination corresponds to CM/ECF.

effort to identify the shooter or shooters, UPD personnel, including Sgt. Scorzafava, canvassed the area around 912 Saratoga Street for video evidence. *Id.*

The next day, Sgt. Scorzafava noticed a surveillance camera on the second story of 1204 Stark Street in Utica, an apartment building near the shootings. Montana Dep. at 11, 27–29; Scorzafava Dep. at 15, 20. Alone, dressed in a shirt and tie, and hoping to review the footage, Sgt. Scorzafava pulled up in an unmarked police vehicle. Scorzafava Dep. at 15–16. After speaking with a building resident and learning the second-story camera belonged to Montana, who lived upstairs, Sgt. Scorzafava knocked on her door. *Id.* at 20; Montana Dep. at 27.

Inside her apartment, Montana descended the stairs and answered the door. Montana Dep. at 29. Sgt. Scorzafava identified himself as a member of UPD. Scorzafava Dep. at 21. Montana does not remember whether Sgt. Scorzafava told her his name, but she maintains that he did not provide his badge number when she asked for it later. Montana Dep. at 35.

Still outside, Sgt. Scorzafava explained that he was investigating the prior evening's shootings, that he noticed Montana's surveillance camera, and that he wanted her permission to review any relevant footage it might have captured. *See* Scorzafava Dep. at 21. Uncomfortable with the request, Montana declined. *Id.*; Montana Dep. at 30. Sgt. Scorzafava persisted, telling Montana that he was trying to help the victims and suggesting she might want someone else to turn over the footage if the victims had been her children. *See* Scorzafava Dep. at 21; Montana Dep. at 30. But Montana did not change her mind. Montana Dep. at 30, 32.

While the details are somewhat hazy, the conversation deteriorated from there. Sgt. Scorzafava recalls Montana swearing at him and saying UPD never helped anybody. Scorzafava Dep. at 21. Montana denies cursing, but admits to telling Sgt. Scorzafava that UPD had "never

helped [her] in the past." Montana Dep. at 34–35.  In any event, both agree that Sgt. Scorzafava responded to the effect of, "[W]ell, if you feel that way, then next time you need something, don't call the fucking police."  *Id.* at 21–22; *see also* Montana Dep. at 33 ("[D]on't ever call the cops if something like this ever happens to you.").

Montana immediately asked Sgt. Scorzafava to leave.  Scorzafava Dep. at 22.  She alleges that, on his way back to his car, Sgt. Scorzafava called her a "bitch," Montana Dep. at 34, though he denies this, Scorzafava Dep. at 22.  Regardless, Sgt. Scorzafava left in short order, and the encounter ended.  Montana Dep. at 33.

It is undisputed that, whether before, during, or after the encounter, Sgt. Scorzafava never entered Montana's apartment.  Scorzafava Dep. at 16.  He never searched the apartment.  *Id.*  He never sought a warrant to search the apartment.  *Id.*  He never asked Montana to accompany him to the UPD stationhouse.  *Id.* at 23.  He never touched Montana.  *Id.* at 28.  He never again so much as spoke with Montana.  *Id.* at 19; Montana Dep. at 37.  Indeed, Montana acknowledges that neither Sgt. Scorzafava nor any other UPD official ever arrested, charged, sued, or otherwise participated in any legal proceedings, whether civil or criminal, against her.  Dkt. No. 46-5 at 87 ("Plaintiff was not arrested as a result of the subject 5-6-22 incident.  She was not so criminally charged.  No civil process was so initiated against her by any UPD or other officers, as a result of the subject 5-6-22 incident herein.").

Thus, the record shows and the parties agree, Montana's and Sgt. Scorzafava's only interaction—an entirely verbal back-and-forth resulting from an investigation into shootings that had injured two people the night before—lasted no more than several minutes from beginning to end.  Montana Dep. at 33 (estimating a length of "[a] few minutes, maybe"); *accord* Scorzafava Dep. at 20 ("I would say the complete exchange . . . took if a minute, max.").

But notwithstanding its limited nature, the encounter has had a long afterlife. Some weeks later, one of Sgt. Scorzafava's superiors, a Sgt. Rios, made him memorialize the events in writing as part of a disciplinary investigation into his behavior. *See* Scorzafava Depo. at 18–19, 30. And based on Sgt. Scorzafava's retort not to call the police for help in the future, his direct supervisor at the time, now-Lieutenant Curley, verbally reprimanded him.[2] *Id.* at 31–32.

As for Montana, while she acknowledges the encounter resulted in no physical injuries, she claims it left her in significant mental and emotional distress. Montana Dep. at 38. More specifically, she has described the following: "I felt like I was betrayed by the police for [Sgt. Scorzafava] to even say that, like it was so unprofessional and it made me not want to ever call another police officer again unless I desperately needed it. Basically afraid of the police." *Id.* at 40. This fear has manifested in an aversion to police vehicles, which causes Montana to "clench up any time [she] see[s] them." *Id.* at 42.

But despite Sgt. Scorzafava's off-color remark, and the fear of police she says it instilled in her, Montana has since sought UPD's assistance at least twice. Montana Dep. at 36–37. And each time, while unsatisfied with the results, she received a response. *Id.* at 37.

Nevertheless, on July 6, 2023, Montana filed a two-count complaint against the City of Utica, "John Doe," and "Richard Roe" in Supreme Court, Oneida County, alleging trespass and abuse of process and seeking damages of $400,000. *See* Dkt. No. 2 at 2–3. Defendants removed the action to federal court on July 21, 2023. Dkt. No. 1. On December 1, 2023, Montana

---

[2] The Court notes that, in an interrogatory response, Montana stated the following about Sgt. Scorzafava's reprimand: "Utica Police Department ('UPD') officers, were also factual witnesses, pertaining to municipality implemented plan, and/or order, and/or decision and/or rule and/or regulation herein, and includes, also, Sergeant Kerry T. Carville, Sergeant Michael Curley, who, along with Captain Stanley Fernalid, and/or Chief Mark Williams, allegedly reprimanded Sergeant Eric Scorzafava, for allegedly abusing process on or about 5-6-22 with respect to the plaintiff." Dkt. No. 46-5 at 86.

amended her complaint to add factual claims and identify the individual defendants, while alleging the same causes of action and damages.  Dkt. No. 22, First Amen. Compl. ("FAC").

This case was reassigned from U.S. District Judge David N. Hurd on December 20, 2024.  Dkt. No. 45.  Subsequently, defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Dkt. No. 46.  Plaintiff opposed, Dkt. No. 48, and defendants filed a reply, Dkt. No. 49.

### III.  LEGAL STANDARD

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In assessing whether any genuine disputes of material fact remain, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV. DISCUSSION

### A. Trespass

As discussed above, Montana brought a discrete cause of action for trespass in both her initial and amended complaints. *See* Dkt. No. 2; FAC. Since then, she has abandoned this claim. Dkt. No. 48-2 at 2 ("Plaintiff, based on the evidence presented, and in the interest of good faith and substantial justice, stipulates to dismissal of the count, sounding in trespass."), 4 ("Plaintiff concedes that no trespass has been committed herein.").

Accordingly, defendants' motion for summary judgment as to trespass must be granted.

### B. Abuse of Process

The Court cannot so quickly dispense with Montana's second cause of action, abuse of process under 42 U.S.C. § 1983. However, for the reasons provided below, summary judgment as to this claim also must be granted.

#### i. Sgt. Scorzafava

Montana's abuse-of-process claim against Sgt. Scorzafava is no model of clarity. As she argues, "[t]he . . . unequivocal statement by defendant Sergeant Scorzafava, to plaintiff that she would no longer be entitled to City of Utica police services, provided as a due process right to any citizen therein, was without any basis in fact and/or in law, and constituted, without privilege and/or justification, an abuse of the judicial process." FAC ¶ 13. On the other hand, defendants contend that the record in this case simply fails to establish abuse of process. Dkt. No. 46-7 at 6.

The Second Circuit has stated the elements of an abuse-of-process claim as follows:

> In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). This encompasses both civil and criminal processes. *Savino v. City of N.Y.*, 331 F.3d 63, 76–77 (2d Cir. 2003) ("Malicious abuse of criminal process also supports liability under § 1983."). Both parties acknowledge this clear authority. Dkt. Nos. 46-7 at 6; 48 at 3.

In opposing summary judgment, however, Montana misconstrues the term "legal process." First, she argues that Sgt. Scorzafava's "interview of the plaintiff, further to investigating a prior shooting incident . . . was part and parcel of regularly issued police process." Dkt. No. 48 at 3. Then, she outlines on UPD's part a broader, but apparently related, "pre-existing duty to behave ethically, and responsibly towards the public citizens such as plaintiff[]," which she claims Sgt. Scorzafava breached by using rough language and refusing to provide his badge number. *See id.* Finally, she claims that omitting information about their encounter in a written report on the shooting investigation, allegedly "to cover up plaintiff's role in the investigation, and . . . Sgt. Scorzafava's unprofessional conduct[,] . . . arguably constitutes abuse of police process." *Id.*

Montana is incorrect. None of these is a "legal process." The Court of Appeals has held that "[p]rocess is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act.'" *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969) (quoting *Matter of Smith*, 24 N.Y.S.2d 704, 710 (1940)); *accord Manhattan Enter. Grp. LLC v.*

*Higgins*, 816 F. App'x 512, 514–15 (2d Cir. 2020) (summary order) (holding the "use of appeals, objections, and motions to prosecute . . . civil lawsuits" was not "legal process," as it insufficiently "encumber[ed] . . . persons or property").

In the criminal context, for example, an arrest can constitute "legal process." *Ficklin v. Rusinko*, 351 F. Supp. 3d 436, 450 (W.D.N.Y. 2019) (collecting cases). So, too, can an initial appearance on a juvenile delinquency charge or an arraignment, as each imposes the requisite kind of "liberty restraint." *Wagner v. Hyra*, 518 F. Supp. 613, 629 (N.D.N.Y. 2021). But the parties agree that Montana never experienced the requisite encumbering legal consequences. Dkt. No. 46-5 at 87 ("Plaintiff was not arrested as a result of [the interaction with Sgt. Scorzafava]. . . . No civil process was so initiated against her by any UPD or other officers, as a result of the subject 5-6-22 incident herein."); Scorzafava Dep. at 16–28; Montana Dep. at 37. As imprudent as any of Sgt. Scorzafava's language or conduct during the encounter may have been, it was no "legal process."

Returning to what a plaintiff claiming abuse of process must prove, as a matter of common sense, Sgt. Scorzafava could not have had either the "intent to do harm" (the second element) or the purpose of "obtain[ing] a collateral objective that is outside the legitimate ends of the process" (the third) in "employ[ing] regularly issued legal process" if he employed no such process in the first place. *Cf. Cook*, 41 F.3d at 80. On this record, no reasonable fact finder could return a judgment against Sgt. Scorzafava on Montana's abuse-of-process claim.

Thus, summary judgment must be granted as to this claim.

**ii.    Remaining Defendants**

The analysis cannot end there, though, because Montana also brought her abuse-of-process claim against defendants Sgts. Carville and Curley, Cpt. Fernalid, Chief Williams, and the City of Utica. But for similar reasons, *i.e.*, the record's failure to establish the requisite elements, summary judgment must be granted as to all remaining defendants, too.

**a.    Other Named Individuals**

As for the other named individuals, Montana alleged that "defendants"—apparently referring to not only Sgt. Scorzafava and his conduct during their conversation, but also Sgts. Carville and Curley, Cpt. Fernalid, and Chief Williams—"had a pre-existing history of domestic and/or other disputes with the plaintiff, and purposely subjected her to the above noted harassment," that "they fabricated and/or lost exculpatory evidence showing plaintiff to have her rights infringed on, by defendant Sergeant Scorzafava, though they should not have done so," that "they engineered and/or implemented policies to harass plaintiff, following the subject 5-6-22 incident and/or singled her out as a subject, in the gun shootings, though they should not have done so," and finally that "they failed to maintain chain of custody of any investigative documentation, pertaining to the 5-6-22 incident involving the plaintiff." FAC ¶ 15.

Throughout the litigation, however, Montana has failed to supply any factual grounds for these claims, whether in her deposition, her interrogatory responses, or anywhere else in the record. Regardless, Montana has explicitly acknowledged that no one associated with UPD subjected her to any legal process in connection with her conversation with Sgt. Scorzafava. Dkt. No. 46-5 at 87 ("Plaintiff was not arrested as a result of the subject 5/6/2022 incident. She

was not so criminally charged. No civil process was so initiated against her by any UPD or other officers, as a result of the subject 5-6-22 incident herein.").

As detailed above, a record that fails to establish any legal process whatsoever cannot sustain an abuse-of-process claim. *See Cook*, 41 F.3d at 80. Accordingly, no reasonable fact finder could return a judgment against Sgts. Carville and Curley, Cpt. Fernalid, and Chief Williams, and the motion for summary judgment must be granted as to them, as well.

**b.     The City of Utica**

Finally, Montana alleged that the City of Utica is also liable for abuse of process due to "a municipality[-]implemented plan, rule, custom, regulation, order and/or decision," pursuant to which Sgt. Scorzafava and the other individual defendants allegedly committed the complained-of abuse of process. FAC ¶ 3. Montana thus attempts to proceed under a *Monell* theory of liability. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1974).

The Supreme Court has held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Yet the law in our circuit is clear: "In a lawsuit containing a *Monell* claim, if the plaintiff cannot show that . . . her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail." *Oliver v. City of N.Y.*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021) (citing *Askins v. Doe*, 727 F.3d 248, 253–54 (2d Cir. 2013) ("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their

commission of the tort resulted from a custom or policy of the municipality."). In other words, where the record does not establish wrongdoing, a municipality cannot be found liable.

Montana's claim against the City of Utica suffers from this very defect. As detailed above, the record cannot support a finding of liability for abuse of process as to any individual defendant, whether Sgts. Scorzafava, Carville, or Curley, Cpt. Fernalid, or Chief Williams.

Therefore, on these facts, a *Monell* claim against their employer must also fail, and summary judgment must be granted as against the City of Utica.

## V.   CONCLUSION

Not only does the record lack any evidence supporting Montana's claims for trespass and abuse of process, but she has conceded the former and all but acknowledged that the latter is without any factual basis. No rational fact finder could return a judgment in her favor.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 46) is GRANTED; and
2. Plaintiff's amended complaint (Dkt. No. 22) is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated: August 28, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge